## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-01817

MARY JANE COX,

    Plaintiff,

v.

DEX MEDIA, INC., a Delaware corporation,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Mary Jane Cox, by and through her attorneys, Sweeney & Bechtold, LLC, hereby submits her Complaint against the above-named Defendant as follows:

### INTRODUCTION

1. This is an employment discrimination suit brought by a former employee of Dex Media, Inc. ("Dex") who was discriminated against based on age and disability, including being constructively discharged after over 14 years of outstanding employment. Plaintiff alleges violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA").

### PARTIES

2. Plaintiff Mary Jane Cox was a resident of the State of Colorado throughout her employment with Dex.

3.      Defendant Dex is a Delaware corporation authorized to do business in Colorado.

4.      Dex's principal office is located at 2200 W. Airfield Drive, DFW Airport, Texas 75261.

5.      Dex maintains a registered agent in Colorado that is located at 7700 E. Arapahoe Road, Suite 220 in Centennial, Colorado 80112.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, in that this action arises under federal law, specifically the ADEA and ADA.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices alleged herein were committed within this judicial district.

8.      At all relevant times, Defendant Dex was covered by the definitions of "employer" set forth in 29 U.S.C. § 630(b) of the ADEA and 42 U.S.C. § 12111(5)(A) of the ADA.

9.      The procedural prerequisites for the filing of this suit have been met.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue letter.

## SPECIFIC ALLEGATIONS

10.     As of the date of this complaint, Plaintiff is 63 years old.

11.     Plaintiff began working at Dex on April 18, 2002.  She was subsequently promoted several times in the following years due to her leadership skills, experience, and excellent sales numbers.

12.     In 2005, Dex promoted Plaintiff to Sales Director, a role in which she remained until her constructive discharge.

13.     Plaintiff consistently earned awards for her performance.

14. For example, from 2002 through 2014, Plaintiff was a part of the President's Circle/Circle of Excellence six times, which signified that she was in the top 5% of Dex's Sales Directors nationwide.

15. Plaintiff was so adept at sales that she was still able to maintain and grow sales for the Yellow Pages in small metro areas like Boulder, Cheyenne, and Fort Collins.

16. She received an "exceeds expectations" rating in the last two annual performance appraisals that she received in 2013 and 2014.

17. Dex failed to provide Plaintiff with performance appraisals in either 2015 or 2016.

18. Regardless, through her constructive discharge in August 2016, Plaintiff received excellent feedback from her supervisors and was often one of the top five Sales Directors according to Dex's Performance Rank Reports ("PRRs"), which took into account both print and digital sales results.

19. Plaintiff mentored and developed burgeoning leaders at Dex, including two younger sales representatives who were promoted to Sales Directors by the time of Plaintiff's constructive discharge.

**Dex's Focus on Creating a Young Workforce**

20. In October 2014, Joe Walsh became Dex's CEO.

21. From the start of his tenure at Dex, Mr. Walsh pushed for the company to become more digitally focused.

22. In June 2015, Jim McCusker, Dex's Chief Revenue Officer and Executive Vice President, held a "Road Show" in Denver where senior leadership could meet local leadership, which Plaintiff attended.

3

23. During the Road Show, Mr. McCusker shared appreciation for the "veterans" of the business but stated, per Mr. Walsh's vision for "the New Dex," that Dex needed to hire and recruit young sales people, specifically new employees in their 20's and 30's.

24. Soon afterward, at a leadership meeting, Mr. Walsh instructed company leadership to "change the salesforce" by exclusively hiring 20- to 30-year old salespeople.

25. Beginning in January 2016 and through Plaintiff's termination, Plaintiff reported to Regional Vice President Steve Topping.

26. During weekly meetings with Plaintiff in early 2016, Mr. Topping reinforced Dex's focus on hiring young salespeople.

27. Amber Dinh, a hiring manager, told sales management, including Plaintiff, that Mr. Walsh had instructed her to only hire digitally savvy 20- to 30-year old employees to drive "The New Dex" forward.

28. In early 2016, Plaintiff suggested that Ms. Dinh hire a sales representative, who happened to be older than 30, for a position.

29. Ms. Dinh responded that she could not because he was "too old."

30. In response, Plaintiff complained to Mr. Topping about the ban on hiring older employees to which Mr. Topping replied "I know we've got to hire the right people. But we at least need to be interviewing the young people."

31. Around 2016, Dex began building a "Dex Campus" based in Dallas, where sales orders for "Dex Hub," a new digital product, could be fulfilled by "campaign managers" in a centralized location.

32. Dex Campus was built specifically as a team of 20- to 30-year old employees, which was clearly visible and communicated throughout the organization.

33. In meetings in March, June, and August of 2016 that Plaintiff attended, Dex senior leadership continued to speak about the need to hire young salespeople.

**Plaintiff's Performance Under Steve Topping**

34. Throughout the remainder of Plaintiff's employment at Dex, Mr. Topping frequently expressed to Plaintiff that he was pleased with the quality of her work and saw her as a critical leader.

35. For example, at the end of February 2016, Mr. Topping asked Plaintiff to fly out a day early for Dex's Dallas leadership conference to meet his team of seven Sales Directors in California; Plaintiff was the only Sales Director from the Rocky Mountain region to whom Mr. Topping made such a request.

36. Mr. Topping told Plaintiff that he appreciated her leadership in her region, that she was a "tremendous asset" to him as he got to know the Rocky Mountain region and its employees, and that he would be "leaning on [Plaintiff] for help."

37. Mr. Topping further told Plaintiff that he was considering her and two other individuals with whom he had worked at a previous company as candidates who would replace him as Vice President after his own promotion to Dex's new acquisitions team because Plaintiff and the two other individuals had a "proven history" as strong sales leaders.

38. Mr. Topping told Plaintiff that he needed her to stay at Dex for a minimum of three to five more years to accomplish an ambitious plan to drive new business that would leave Plaintiff "in a great position to retire."

5

**Plaintiff's Disability**

39.     On February 10, 2016, Plaintiff had a heart attack.

40.     Plaintiff's physician diagnosed her with coronary disease and Plaintiff had cardiac surgery that same day.

41.     Plaintiff was discharged from the hospital on February 12, 2016.

42.     Plaintiff's physician instructed her to work from home the week of February 15 and cleared her to work without restrictions starting February 22, 2016.

43.     Plaintiff had no issues returning to work and was in good health.

44.     After Plaintiff returned to work, Dex employees treated her differently, including making comments that Plaintiff should take time off to "recover" and/or offered to do her work in order to "help."

45.     A representative of Dex's Human Resources Department, Monique Love, told Plaintiff that she did not know why Plaintiff was "pushing so hard" and encouraged Plaintiff to take time off "to heal."

46.     Ms. Love also told Plaintiff that several of Plaintiff's employees expressed concern about riding in the car with Plaintiff in the field because they were afraid that she would have another heart attack while driving.

47.     One Vice President, Robin Hager, also voiced concerns that Plaintiff would have another heart attack while traveling for Dex.

48.     Neither Ms. Love nor anyone else at Dex did anything to quell these meritless concerns that were based solely on Plaintiff's disability and history of the same and not her actual abilities.

49. As a result, Plaintiff had to explain repeatedly that she was not ill, her doctor had cleared her to return to work, and that she was capable of working despite her heart attack.

**Plaintiff's Constructive Discharge**

50. On August 22, 2016, Mr. Topping called Plaintiff and asked her to meet him at a Panera Bread location down the street from the office.

51. During the meeting at Panera, Mr. Topping told Plaintiff that it had been "a rough couple of days" for him, that he was "so upset," and repeated several times that "it wasn't supposed to be this way."

52. He said that he had to eliminate several Sales directors and had just eliminated two in California.

53. He then said that he and Plaintiff needed to call Ms. Love and repeated, "I tried, [Mary Jane], I did" but that "I must go down one Director in Colorado and it's going to be you."

54. Plaintiff was shocked and asked how she could be demoted when she was outperforming at least two other Colorado Directors, both of whom were younger (ages 44 and 55) and less experienced than Plaintiff.

55. Mr. Topping responded that he knew that it did not make sense but asked Plaintiff if she would consider a job in Dallas or Albuquerque.

56. When Plaintiff asked for additional information about the Dallas job, however, Mr. Topping provided no specifics and stated only that Plaintiff should take a demotion to a Sales Representative position "for a while" and he would work to "make it happen in Dallas."

57. Mr. Topping then called Ms. Love and said that Plaintiff was being offered $10,000 if she signed a release of all legal claims and a demotion to Sales Representative. Plaintiff said that she was shocked and needed to think about the situation.

58. When Plaintiff said again that there was no justification for her demotion, as she had been promoted, developed all of the Rocky Mountain region, and that Mr. Topping had told her that she was a candidate for promotion, and that this just did not make sense, Mr. Topping responded that he knew that it did not make sense.

59. Faced with an imminent demotion, reduction in pay and responsibilities, and further adverse action based on her age and/or disability, Plaintiff refused to sign the release and sent Mr. Topping a letter of resignation on August 24, 2016 that was effective September 9, 2016.

60. After Mr. Topping received Plaintiff's resignation, he tried to convince her to accept the demotion and sign the release of her legal claims in exchange for the payment, but Plaintiff refused.

61. Before Plaintiff's last day of work on September 9, Dex threw her a "retirement" party.

62. At the time of her constructive discharge, Plaintiff was the oldest Dex Sales Director in her region and possibly the oldest Sales Director in the country.

63. After Plaintiff's constructive discharge, Dex gave Plaintiff's former team of Sales Representatives to a younger Sales Director (age 44) who Plaintiff had been outperforming according to Dex's recent PRRs.

64. Based on information and belief and in anticipation of discovery, the sales of Plaintiff's former team dropped dramatically under the leadership of the younger Sales Director. This poor

performance continues to the present, and the younger Sales Director is still a Dex employee as of the date of this Complaint.

65. Plaintiff filed Charge of Discrimination number 541-2017-01214 on April 12, 2017 with the EEOC in which she alleged that she was discriminated and retaliated against based on her age and/or disability in violation of the ADEA and the ADA.

66. On April 19, 2018, the EEOC issued Plaintiff a Notice of Right to Sue in connection with Charge of Discrimination number 541-2017-01214.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Age Discrimination in violation of the ADEA)

67. The foregoing allegations are realleged and incorporated herein by reference.

68. By virtue of her age, Plaintiff belongs to a protected group under the ADEA.

69. Dex subjected Plaintiff to less favorable terms and conditions of her employment based on age. This treatment included, but is not limited to: employing a policy of preferential hiring and treatment of younger employees, demoting Plaintiff despite the fact that her performance was superior to several younger Sales Directors in the Rocky Mountain region, materially altering the nature of Plaintiff's job and responsibilities, and constructively discharging Plaintiff.

70. The discriminatory actions of Dex were done knowingly and willfully, justifying an award of liquidated damages.

71. As a direct and proximate result of Dex's actions, Plaintiff has suffered damages, including lost wages and benefits.

**SECOND CLAIM FOR RELIEF**
(Disability Discrimination in violation of the ADA, as amended)

72. The foregoing allegations are realleged and incorporated herein by reference.

73. Plaintiff's coronary disease is a physical impairment that substantially limits several major life activities, including but not limited to: walking, standing, sitting, lifting, and working, the operation of a major bodily function, including but not limited to the circulatory and cardiovascular systems, and the operation of an individual organ within a body system, the heart.

74. Plaintiff was able and qualified to perform the essential functions of her job with or without a reasonable accommodation.

75. Defendant regarded Plaintiff as disabled within the meaning of 42 U.S.C. § 12102(1)(C).

76. Plaintiff has a record of impairment covered within the definition of the ADA, including of cardiac disease.

77. Defendant discriminated against Plaintiff by, among other instances: questioning whether Plaintiff could perform her job duties despite the fact that her physician had released her to return to work without restrictions, demoting Plaintiff despite the fact that her performance was superior to several Sales Directors in the Rocky Mountain region, and constructively discharging Plaintiff.

78. Defendant has discriminated against Plaintiff in violation of 42 U.S.C. § 12112(a) because Plaintiff was disabled within the meaning of 42 U.S.C. § 12102(1)(A)-(C).

79. Defendant's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

80. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and

emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses

WHEREFORE, Plaintiff Mary Jane Cox respectfully requests that this Court enter judgment in her favor and against Defendant Dex and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life, on Plaintiff's Second Claim for Relief;

B. Back pay and benefits;

C. Reinstatement or front pay and benefits;

D. Injunctive and/or declaratory relief;

E. Punitive damages and/or liquidated damages as allowed;

F. Attorney fees and costs of the action, including expert witness fees, as appropriate;

G. Pre-judgment and post-judgment interest at the highest lawful rate; and

H. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted July 18, 2018.

           By:  SWEENEY & BECHTOLD, LLC

               <u>s/Charlotte N. Sweeney</u>
               Charlotte N. Sweeney
               650 S. Cherry St., Ste. 700
               Denver, CO 80246
               Telephone: (303) 865-3733
               Fax: (303) 865-3738
               E-mail: cnsweeney@sweeneybechtold.com

               <u>s/Ariel B. DeFazio</u>
               Ariel B. DeFazio
               650 S. Cherry St., Ste. 700
               Denver, CO 80246
               Telephone: (303) 865-3733
               Fax: (303) 865-3738
               E-mail: abdefazio@sweeneybechtold.com

               ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
144 Bearclaw Circle
Aledo, TX 76008

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

By: SWEENEY & BECHTOLD, LLC

s/Charlotte N. Sweeney
Charlotte N. Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

s/Ariel B. DeFazio
Ariel B. DeFazio
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: abdefazio@sweeneybechtold.com