IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01817-KLM

MARY JANE COX,

     Plaintiff,

v.

DEX MEDIA, INC., a Delaware corporation,

     Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on **Plaintiff's Motion to Confirm Arbitration Award** [#34][1] ("Motion to Confirm") and **Dex Media, Inc.'s Motion to Vacate Arbitration Award** [#36] ("Motion to Vacate"). The Court has reviewed the Motions [#34, #36], the Responses [#47, #37, #38], the Replies [#41, #42], the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion to Confirm [#34] is **GRANTED**, and the Motion to Vacate [#36] is **DENIED**.

## I. Background

     Plaintiff commenced this action in July 2018 alleging that she was constructively discharged by Defendant Dex Media, Inc. ("Dex") in September 2016. *See Compl.* [#1]. Plaintiff alleged that Dex violated the Age Discrimination in Employment Act ("ADEA") and

_____

[1] "[#34]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Americans with Disabilities ("ADA").  *Id.*

In December 2018, after Dex indicated that it would be filing a motion to compel arbitration, Plaintiff consented to arbitrate pursuant to the Arbitration Agreement between the parties.  *See Mot. Confirm* [#34] at 2 and Ex. 1, Arbitration Agreement.  The Arbitration Agreement specifically provides that any court having jurisdiction may enter judgment upon the award. [#34-1] at 5.

Thereafter, the Parties filed a Joint Motion to Administratively Close Civil Action [#23] in this case.  This Motion [#23] was granted by Order [#24] of December 17, 2018, and the case was administratively closed subject to being reopened for good cause.

Plaintiff filed her Demand for Arbitration with the American Arbitration Association ("AAA") on December 19, 2018.  The parties participated in a three-day arbitration before AAA Arbitrator Connie Peterson ("Arbitrator" or "Arbitrator Peterson") on November 18 through November 20, 2019.

At the conclusion of those proceedings, Arbitrator Peterson entered an Interim Award [#34-2] on January 30, 2020, in which Plaintiff was awarded economic and non-economic damages on her ADEA claim.  *Mot. Confirm*, Ex. 2.  The Arbitrator found that Dex did not violate the ADA.  *Id.*  The Arbitrator issued a Final Award [#34-3] on March 9, 2020, determining the amount of attorneys' fees and costs to be awarded to Plaintiff.

The parties filed a Joint Status Report and Motion to Reopen [#26] on March 30, 2020, in which they requested the Court reopen this case for good cause to determine whether the arbitration award should be enforced.  The Court granted the parties' request to reopen the case by Minute Order [#27] of March 31, 2020.  The Court ordered briefing on the enforceability of the award, consistent with the parties' request.  *See* [#33].  The

Motion to Confirm [#34] and Motion to Vacate [#36] were then filed and briefed.

Plaintiff seeks confirmation of the arbitration award (the "Award") pursuant to 9 U.S.C. § 9 of the Federal Arbitration Act ("FAA"). *Mot. Confirm* [#34] at 3-4. Dex seeks to vacate the award, arguing that Arbitrator Peterson exceeded her powers under the Arbitration Agreement and acted in manifest disregard of the law. *See, e.g., Mot. Vacate* [#36]. The Arbitration Agreement provided that "the arbitrator shall have no authority to add to, detract from, change, amend or modify existing law." *Id.* at 2. Dex argues that the Arbitrator violated this provision and exceeded her authority by rejecting the well-established "but-for" causation standard for claims under the ADEA. *Id.* at 2-3, 11-20. The Arbitrator allegedly failed to provide any support for that decision, and Dex argues that the Award must be vacated because the Arbitrator expressed a manifest disregard for the law. *Id.* at 3, 21-25. Dex also argues that the Arbitrator exceeded her powers by not revealing the "essential findings and conclusions" as required by the Agreement. *Id.* at 21.

Plaintiff asserts in response that the Arbitrator applied the correct legal standards to Plaintiff's ADEA claims and provided more than enough detail to support her conclusion as required by the Arbitration Agreement. *See Resp. Mot. Vacate* [#38] at 5. Plaintiff also argues that Dex's challenge to the arbitration award is untimely and must be denied on that basis. *Id.* at 1-4. Accordingly, Plaintiff requests confirmation of the Award as well as an award of her attorney's fees and costs. *Id.* at 22; *see also Mot. Confirm* [#34].

## II. The Arbitration Awards

The Interim Award [#34-2] and the Final Award [#34-3] are identical; the only addition to the Final Award is an analysis and determination of the amount of attorney's fees to be awarded to Plaintiff. *See Resp. Mot. Vacate* [#38] at 4 n. 2. Thus, the Court

focuses on the Final Award.

The Arbitrator found that Plaintiff presented a *prima facie* case of discrimination under the ADEA which creates an inference of discrimination. *Final Award* [#34-3] at 5-6. The Arbitrator further found that Dex failed to articulate a legitimate, non-discriminatory reason for its demotion and constructive discharge decision, and that Dex's argument that Plaintiff must show age discrimination was the "but for" factor for Dex's action "is not correct and misleading." *Final Award* [#34-3] at 6. The Arbitrator concluded that Plaintiff was employed by Dex from 2002 until September 2016, at which time she left her employment because of unlawful age discrimination and constructive discharge. *Id.* At that time, Plaintiff was the oldest Sales Director in her region. *Id.*

As grounds for the decision, the Arbitrator stated that Plaintiff, who is a high school graduate, spent her entire career in the telecom industry. During her tenure as Sales Director for Dex, Plaintiff's "performance was excellent." *Final Decision* [#34-3] at 6. Just five months before Plaintiff was constructively discharged, the Arbitrator noted that Plaintiff had received an award for her performance. *Id.* As part of her position, Plaintiff trained and mentored sales associates, including Ky Christensen and Shawna Meachum. *Id.*

In October 2014, Joe Walsh ("Walsh") became the Dex CEO. *Final Decision* [#34-3] at 6. Several witnesses testified about the change in corporate culture after Walsh became the CEO. *Final Decision* [#34-3] at 6. The witnesses testified that the new direction of Dex was spoken about at "Road Shows" across the county in 2014 and 2015, which included statements that the company was seeking younger, digital-savvy, "moldable" workers. *Id.* at 6-7. While some witnesses disputed this, the Arbitrator found it was more probable than not that Dex's management (Walsh, McCusker and Dinh) made

the comments about looking for younger workers. *Id.* at 7. She stated, "[t]he message was clear: [i]f you are an older worker, you were no longer valued or wanted." *Id.*

In 2015, after a reorganization that removed a level of management, there were five Sales Directors in the Rocky Mountain Region: Plaintiff (age 62), Ky Christensen (age 37), Shawna Meacham (age 44), Claudia Villani (age 45) and Leslie Cooke (age 51). *Final Decision* [#34-3] at 7. In June 2015, regional supervisor Ryan Cunningham ("Cunningham") suddenly removed all of Plaintiff's highest performing representatives from her team. *Id.* Cunningham then reassigned the three lowest performers on another team to Plaintiff. *Id.* The result of this move was to dramatically decrease Plaintiff's business statistics and income potential because it weakened the strength of her team. *Id.*[2]

Plaintiff complained about this action by Cunningham and complained about age and gender discrimination at Dex. *Final Award* [#34-3] at 8. The Arbitrator found that it was undisputed that Dex did nothing to investigate the complaints of discrimination in violation of its own policies. *Id.* In fact, Ryan's only response was to malign and discredit Plaintiff by telling CEO Walsh that he received a "sob story" from Plaintiff. *Id.* This incident is referenced, according to the Arbitrator, because it serves as the backdrop for Plaintiff's failure to complain after her constructive discharge in August 2016, as "she learned that complaining got nowhere." *Id.*

In January 2016, Steve Topping ("Topping") was hired as the new Regional Vice President. *Final Decision* [#34-3] at 8. He supervised the five sales managers in the Rocky

---

[2] According to Plaintiff, her income in 2015 was approximately $317,000. In 2016, her income fell to $105,000 for the 8-month period she was employed that year, thereby indicating a yearly total of approximately $175,000. *Resp. Mot. Vacate* [#38] at 10 n. 7.

Mountain Region as well as others in Utah and California.  *Id.*

In February 2016, Plaintiff suffered a heart attack.  *Final Decision* [#34-3] at 8.  She was back to work shortly thereafter without any job restrictions, but testified she heard complaints about the wisdom of her quick return.  *Id.*

Plaintiff improved the performance of her new sales team, and her performance continued to place her in the upper rankings of managers in the Rocky Mountain Region. *Final Decision* [#34-3] at 9.  She received the "MVP" award twice in 2016, the Top Sales Director PRR Performance Award for the first quarter of 2016, and obtained membership in the "Dex Hundy" Club in 2016, indicating that she had met the company's goals of selling at least 200 of the new Dex Hub product.  *Id.*  Ky Christensen was the only other manager in the Rocky Mountain region to do the same.  *Id.*

Dex determined in August 2016 that a reorganization was necessary.  *See Mot. Vacate* [#36] at 6.  The reorganization involved moving or demoting  approximately thirty-two directors/inside sales managers.  *Id.* at 6-7.  Dex asserts that the reorganization process encompassed looking at "each market specifically" and determining the number of accounts available to decide how many salespeople were needed and, in turn, how many sales managers were necessary.  *Id.* at 7.  To identify affected directors/sales managers, Dex looked at two factors: 1) specific objective numbers from components of the Performance Ranking Report or "PRR" (75% of the final score) and 2) a skills assessment prepared by each employee's direct supervisor (25% of the final score).  *Id.* The skills assessment was ultimately reflected as a "Leadership" score when ranking the Sales Directors.  *Id.* at 8.  The scores were combined to determine each Sales Director's ultimate ranking.  *Id.* at 7.  The same data was allegedly used to compare all Sales

Managers nationwide.  *Id.*

In Colorado, Dex states that it determined based on declining accounts, revenue, and salespeople that it needed to select one of the four Sales Directors for demotion.  *Mot. Vacate* [#36] at 8.  The lowest ranking Director would be selected for the demotion.  *Id.* Topping performed the assessments for Colorado, and compared Plaintiff against the three other Sales Directors in the Colorado region - Shawna Meacham, Ky Christensen, and Claudia Villani.  According to Dex, Plaintiff scored the lowest on the Ranking Report of all eleven Sales Directors under Topping's supervision, and scored the lowest of the four Colorado Sales Directors.  *Id.* at 8-9.

On August 23, 2016, Topping told Plaintiff that she was being demoted, and a three-way "disast[rous] conversation" ensued with Monique Love, Dex's Human Resources Partner, on the phone.  *Final Decision* [#34-3] at 9.  Plaintiff testified that she was shocked because she had no prior notice, and that Dex had not communicated any concerns to her about her performance.  *Id.* at 9-10.  In fact, she testified that Topping had previously communicated that she was among a few managers that he was considering as his successor.  *Id.* at 9.  Further, she testified that Topping had confided to her that if it became necessary to eliminate any Sales Managers, he would choose Claudia Villani or Leslie Cooke due to their performance.  *Id.*

Also on August 23, 2016, Topping gave Plaintiff written notification of the decision and a formal offer of a two-step demotion into a non-management sales position with a base pay of $38,000.  *Final Decision* [#34-3] at 9.  The two other managers who were demoted in California retained management duties and were offered a higher rate of pay than Plaintiff.  *Id.* at 9-10.  Plaintiff offered to relocate to keep acceptable employment, but

-7-

Topping told her she was not "mobile" and offered her no other positions.  *Id.* at 10.

While Dex contended that Plaintiff was selected for demotion by "objective nationwide criteria[,]" Arbitrator Peterson disagreed.  *Final Decision* [#34-3] at 10-11.  The Arbitrator found that the leadership (skill-set) assessment, which was 25% of the evaluation, contained subjective decisions, was manipulated to favor others and disfavor Plaintiff, and "does not appear to have been fairly applied."  *Id.* at 11.  Thus, the Arbitrator rejected Dex's argument that the criteria was "clean and objective."  *Id.* at 11.  Instead, the Arbitrator stated that at some point, Dex "knew what would happen if the criteria were used in the manner they were applied[,]" and that Dex "took the opportunity to move out an aged employee."  *Id.* at 10-11.  "Here, was an opportunity to bring Walsh's and McCusker's vision of a youthful company to fruition."  *Id.* at 10.  After 15 years of beneficial service to Dex, Plaintiff was offered only a low-level wage without reasonable alternatives.  *Id.* at 11.  The Arbitrator found that the two-level demotion offered to Plaintiff with the severe reduction in pay "was simply inadequate, offensive and discriminatory."  *Id.* at 11.

Thus, the Arbitrator found that Dex failed to articulate a legitimate, non-discriminatory reason for its decision, and that Plaintiff "presented evidence proving that [Dex's] proffered reason is pretextual such that a reasonable factfinder cannot find it worthy of belief."  *Final Decision* [#34-3] at 11.  The Arbitrator found for Plaintiff on her ADEA claim, but not on the ADA claim.  *Id.* at 11, 15.

Plaintiff was awarded $764,400 in back pay and loss of fringe benefits for a three-year period from September 9, 2016.  *Final Award* [#36-3] at 11-12, 15.  Plaintiff was also reimbursed $17,800 in medical expenses.  *Id.*   In addition, Plaintiff was awarded reasonable attorneys fees and costs, and the Arbitrator noted in the Interim Award [#34-2]

that she retained jurisdiction after the award for the purpose of determining what fees and costs should be awarded. *Id.* at 13. In the Final Decision [#34-3], the Arbitrator awarded fees in the amount of $241,349 and costs in the amount of $10,062. *Id.* at 15. The total amount of the award was $1,033,611.00 plus interest. *Id.* at 16.

### III. Standard of Review

Section 10 of the FAA identifies four grounds on which an arbitration award may be vacated by a district court:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Court's review of an arbitrator's decision under the FAA "is strictly limited, this highly deferential standard has been described as among the 'narrowest known to the law.'" *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (citation omitted). This "limited standard of review and [the] exercise of caution in setting aside arbitration awards" is employed because a "'purpose behind arbitration agreements is to avoid the expense and delay of court proceedings.'" *Id.* (citation omitted).

Dex argues that the Arbitrator exceeded her power under Section 10(a)(4) of the FAA.  "A party seeking relief under that provision bears a heavy burden."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  As the Supreme Court noted, "[b]ecause the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision must stand, regardless of a court's view of its (de)merits."  *Id.*  The sole question for the Court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Id.*  "Only if 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflects [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn is decision."  *Id.*; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("'It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.'") (citation and internal quotation marks omitted).

Nonetheless, the Supreme Court has also held that "parties are generally free to structure their arbitration agreements as they see fit."  *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989).  The *Volt* Court noted that "[j]ust as they may limit by contract the issues which they will arbitrate, . . . so too may they specify by contract the rules under which that arbitration will be conducted."  *Id.*  Permitting courts to "'rigorously enforce' such agreements according to their terms. . . give[s] effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.'"  *Id.* (citation omitted).  The parties' intentions control, "as an arbitrator derives his or her powers [from the parties' decision] to forgo legal process and submit their disputes to private

-10-

dispute resolution." *Stolt-Nielsen*, 559 U.S. at 682.  Thus, the parties have a "right to arbitration according to the terms for which they contracted." *Western Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 262 (9th Cir. 1992).

The Tenth Circuit has also indicated that vacatur is appropriate when the arbitrator shows a manifest disregard for the law.  *See e.g., MEMC II, LLC v. Cannon Storage Sys., Inc.*, 763 F. App'x 698, 702 (10th Cir. 2019).  "[M]anifest disregard of the law" is exhibited when an arbitrator demonstrates "willful inattentiveness to the governing law." *DMA Intl., Inc. v. Qwest Communications Intl., Inc.*, 585 F.3d 1341, 1345 (10th Cir. 2009) (citation omitted); *see also Bowen*, 254 F.3d at 932 (stating that "a finding of willful disregard means the record will show the arbitrator[ ] knew the law and explicitly disregarded it").

## IV.  Analysis

## A.    Whether Dex Waived the Right to Challenge the Arbitration Decision

Plaintiff contends that Dex did not file its Motion to Vacate within three months of the Interim Award [#34-2], or by April 30, 2020, as required by 9 U.S.C. § 12, and that it thus waived the right to challenge the award. *Resp. Mot. Vacate* [#38] at 2.  Plaintiff argues that the Interim Award [#34-2] commenced the three-month period as it resolved all issues of liability and damages on the underlying claims. *Id.*  Dex contends, on the other hand, that the three-month limitations period did not begin until the Final Award [#34-3] was issued, and that its Motion to Vacate [#36] was timely.  Moreover, Dex asserts that it gave notice of its intent to file a motion to vacate even within the three month period after the Interim Award [#34-2] was issued.

As noted previously, the Interim Award [#34-2]  is identical to the Final Award [#34-3] except that the Final Award [#34-3] discusses the amount of attorneys' fees and costs to

be awarded to Plaintiff.  *Id.* at 12-15.  The Interim Award [#34-2] noted that no evidence was received at the hearing about attorneys' fees and costs, and ordered briefing on that issue.  *Id.* at 12-13.  The Interim Award [#34-2] also stated that the Arbitrator would "retain jurisdiction for the purpose of determining what attorneys' fees and costs should be awarded to Claimant, the prevailing party."  *Id.*  However, the Interim Award [#34-2] concluded that it was "a full and complete resolution of all claims and defenses submitted" in the arbitration proceeding.  *Id.* at 14.  Plaintiff submits that language makes the Interim Award [#34-2] sufficiently final to trigger the three-month notice period as to a motion to vacate.

Turning to the Court's analysis, the FAA requires notice of a motion to vacate, modify, or correct an arbitration award to "'be served upon the adverse party or his attorney within three months after the award is filed or delivered.'"  *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007) (quoting 9 U.S.C. § 12).[3] "'A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award.'"  *Id.* (quoting *Int'l Brotherhood of Elec. Workers v. Babcock & Wilcox*, 826 F.2d 962, 966 (10th Cir. 1987)). The purpose of the relatively short limitations period "is to accord the arbitration award finality in a timely fashion."  *Int'l Brotherhood*, 826 F.2d at 966.

Plaintiff argues that courts have construed interim awards to be "final" for purposes of the three month notice requirement "where the interim award determines liability damages and entitlement to attorneys' fees and costs."  *See Resp. Mot. Vacate* [#38] at

---

[3] As delineated by the Scheduling Order [#36-8] signed by the Arbitrator ([#36-8]), "[f]ederal substantive law" applies to the case.

2 (citing *Nu-Best Franchising, Inc. v. Motion Dynamics, Inc.*, No. 805CV507T27TGW, 2006 WL 1428319, at *4 (M.D. Fla. May 17, 2006) (finding that the three-month notice period began from date of interim award as it resolved the clams in the arbitration and reserved jurisdiction only to resolve the amount of attorney's fees and costs, and that the motion to vacate filed more than three months after the interim award was untimely)). Plaintiff asserts that this is consistent with "[d]ecades of case law [that] has established that the issue of pending attorney's fees, or other non-substantive deadlines, does not toll appeal deadlines." *Reply Mot. Confirm* [#42] at 3; *see also Resp. Mot. Vacate* [#38] at 3.

Dex disagrees, citing a case from this Court which held that the three-month period for giving notice of the intent to file a motion to vacate begins running from entry of the Final Arbitration Award, not the Interim Award. *See e.g., OrbitCom, Inc. v. Qwest Communications Co., LLC*, No. 12-cv-01639-WYD-CBS, 2013 WL 951093, at *4 (D. Colo. Mar. 12, 2013) (analyzing, without questioning timeliness, a motion to vacate that was filed within 90 days of the final award, where the interim award was filed sixteen months earlier and the final award only "corrected a mathematical error, included findings on the calculation of interest, and eliminated an attorney fee award previously made. . ."). Other courts have also held that the three-month period begins running after the final award. *See Diamond Resorts U.S. Collection Dep't, LLC v. Johnson*, No. 6:18-cv-90-Orl-37TBS, 2019 WL 11638840, at *1 (M.D. Fla. April 16, 2019); *cf. Swenson v. Bushman Inv. Properties, Ltd.*, 870 F. Supp. 2d 1049, 1054 (D. Idaho. 2012) (holding that an interim award may be deemed final for purposes of the three-month limitations period only if "'the award states it is final, and if the arbitrator intended the award to be final'") (citation omitted). Similarly, courts have refused to confirm an interim award on the basis that it was not "final" except

in certain situations, *e.g.,* where "the party seeking confirmation was able to identify an *immediate need* for relief.'" *Lighthouse Galleries, LLC v. Thomas Kinkade Co.*, No. 08-13466, 2008 WL 5102245, at *2-3 (E.D. Mich. Dec. 1, 2008); *see also Reply Mot. Vacate* [#41] at 2 (citing cases).

The Court need not resolve this issue, however, as it finds that Dex gave timely notice within the three-month period after the Interim Award [#34-2]. Thus, while the Motion to Vacate [#36] was not filed until May 15, 2020 (more than three months after that Award was issued), Dex gave notice of its intent to file a motion to vacate earlier, as indicated in the parties' Joint Status Report and Motion to Reopen [#26] filed March 30, 2020. *Id.* at 2 ("Defendant has not yet paid any of the final award and will be filing a Motion to Vacate the Final Award"). Based on that filing, the Court ordered another Joint Status Report to be filed "setting forth a proposed schedule for the filing of the motions referenced in the Motion [#26] and a proposed briefing schedule." *Minute Order* [#27]. In the parties' Second Joint Status Report [#32] filed on April 13, 2020 (also within the three-month period after the Interim Report [#34-2]), Dex discussed the motion to vacate it would be filing, proposing a filing deadline of June 7, 2020, which it stated it believed was within the three-month filing period permitted by the FAA. *Id.* at 2. Plaintiff raised no objections to that time-frame, and did not assert in either of the Status Reports her contention that the three-month limitations period began after the Interim Award [#34-2]. Plaintiff also did not assert that Dex had failed to give proper notice of its intent to file a motion to vacate. In response to the Second Joint Status Report [#32], the Court ordered both parties to file their motions by May 15, 2021 (*Minute Order* [#33]), and Dex's Motion to Vacate [#36] was filed on that deadline.

-14-

Plaintiff's argument that Dex's Motion to Vacate [#36] is untimely is disingenuous in light of this procedural posture and the filing of the Joint Status Reports [#26, #32].  There is no question that Plaintiff was on notice of Dex's intent to file a motion to vacate within the three-month period after issuance of the Interim Award [#34-2], and the Court finds that Dex's notice was adequate.  *See Western Employers*, 958 F.2d at 261 (holding that notice was  adequate under Section 12 of the FAA when "there was no question" that Jefferies was on notice of Western's intent to file a motion to vacate, and that although Western did not file a motion to vacate within the 3 month time period, "'nomenclature is not controlling[]'"); *Young v. Alagna*, No. 3:99-cv-2309, 2000 WL 472863, at *4 (N.D. Tex. Apr. 24, 2000) (holding that an answer stating that a party "intends to file a motion to vacate the award" gave the court and opposing party notice that it was challenging the arbitration award, even though it was not styled as a "motion to vacate").[4]  Accordingly, the Court rejects Plaintiff's argument that the Motion to Vacate [#36] was untimely.

**B.    The Motion to Vacate [#36]**

**1.    Whether the Arbitrator Exceeded Her Powers In Connection with the But-for Causation Standard**

Dex asserts that the Arbitrator exceeded her authority by not applying the well-established "but-for" causation standard for claims under the ADEA as presented to her on

---

[4]  Dex also notes that the Arbitration Agreement [#34-1, #36-1] provides that arbitration would proceed under the AAA's rules and procedures.  *Reply Mot. Vacate* [#41] at 3-4.  The AAA Employment Arbitration Rules state that "legal delivery of the award" is limited to: 1) placing of the award or a true copy thereof in the mail; 2) personal service of the award; or 3) the filing of the award in any manner that may be required by law.  *Id.* at 4 (citing  AAA Employment Rules, Rule 39(f)).  Dex asserts that the Interim Report was emailed to it, and that the AAA Rules do not provide for an email to constitute "legal delivery" of the award.  *Id.*  Assuming this is accurate, it also appears that the email of the Interim Award would not have been sufficient to start the 90-day clock.

several occasions, both pre-hearing and post-hearing.  *Mot. Vacate* [#36] at 2.  According to Dex, this violated the contractual provision that the "the arbitrator shall have no authority to add to, detract from, change, amend or modify existing law."  *Arbitration Agreement* [#34-1] at  5.  The Court finds that this term "specifies the scope of the arbitrator's authority regarding interpretation of the governing law."  *Perez v. Qwest Corp.*, 883 F. Supp. 2d 1095, 1118 (D.N.M. 2012) (interpreting the same language).  Dex also argues that the Arbitrator's refusal to apply the but-for causation standard constituted a manifest disregard for the law.  *Id.* at 21-25.

Turning to the Award, the Arbitrator stated that Dex's "argument that Plaintiff must show age discrimination was the 'but for' factor for Dex's action is not correct and misleading."  *Final Award* [#34-3] at 5.  The Arbitrator did not further explain this statement, and it is well established that but-for causation is required in an ADEA case.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (mandating the "but for" liability standard and rejecting the "mixed motives" theory of liability in ADEA cases).  The but-for causation requirement has consistently been affirmed by the Tenth Circuit since the *Gross* case.  *See e.g., Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (citing *Gross*); *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011); *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273 (10th Cir. 2010).

Plaintiff does not dispute that but-for causation is required in ADEA cases.  She asserts, however, that the but-for causation requirement has been defined in *Jones* to mean that an ADEA plaintiff need not show that age was the sole factor for the adverse employment decision, and Dex's recitation of the law to the Arbitrator incorrectly implied that she must.  *Resp. Mot. Vacate* [#38] at 18.  According to Plaintiff, it was Dex's failure

to understand or articulate the proper legal standard that led the Arbitrator to criticize Dex and its citation to the but-for causation test. *Id.* at 19. In that regard, Dex argued that Plaintiff "was required to prove by a preponderance of the evidence that she met the high standard of showing that 'but for' age, she would not have been selected for demotion." *See, e.g., Mot. Vacate* [#36], Ex. I, Respondent's Post Arbitration Brief at 2, 11. Plaintiff further avers that the Arbitrator properly applied the standard set forth in *Jones* which allows a plaintiff to prove age discrimination through the showing of a prima facie case and pretext. *Resp. Mot. Vacate* [#38] at 18-19. The Arbitrator's decision, according to Plaintiff, "clearly reflects the nuance of age discrimination claims that *Jones* demands and the detailed findings of pretext that the claim required." *Id* at 19. Plaintiff avers that "Dex fails to understand that a finding of pretext, coupled with the prima facie case, allows a factfinder to infer discriminatory intent and but for causation[,]" and that the "but for" standard articulated in *Gross* neither replaces nor precludes application of the *McDonnell Douglas*[5] framework of proof to ADEA claims. *Id.* (citing *Jones*, 617 F.3d at 1278-79).

The *Jones* court prefaced its decision by acknowledging *Gross* and its holding that the ADEA requires but-for causation. 617 F.3d at 1277. However, it stated that "this causal standard does 'not require[ ] [a plaintiff] to show that age was the sole motivating factor in the employment decision.'" *Id.* (citation omitted). Instead, *Jones* held that an employer may be held liable under the ADEA if other factors contributed to its decision to take the adverse action, as long as "age was the factor that made a difference[,]" and stated that *Gross* does not hold otherwise. *Id.* at 1277-78. The Arbitrator's finding that

---

[5] *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Dex's argument that Plaintiff "must show age discrimination was the 'but for' factor is not correct and misleading" must be analyzed in this context, as Dex had suggested that Plaintiff must show that age was the sole motivating (but-for) factor.

The Tenth Circuit in *Jones* then stated that "[a] more nuanced question is whether *Gross* rendered the *McDonnell Douglas* framework of proving discrimination inapplicable to claims brought pursuant to the ADEA[,]" a question that "*Gross* expressly left open." *Jones* 617 F.3d at 1278. The *Jones* court found that *Gross* did not overturn circuit precedent applying the *McDonnell-Douglas* framework to ADEA cases, and that *Gross* "has no logical effect" on its application. *Id.* That is because while *Gross* held that "the burden of persuasion [n]ever shifts to the party defending an alleged mixed-motives discrimination claim" under the ADEA, *McDonnell-Douglas* shifts only the burden of production. *Id.* "Throughout the three-step process, '[t]he plaintiff . . . [still] carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis." *Id.* The Tenth Circuit went on to find that a prima facie case of discrimination "'combined with sufficient evidence that the employer's asserted justification is false[,] . . . may permit the trier of fact to conclude that the employer unlawfully discriminated.'" *Id.* at 1280 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)). A "pretext-plus" standard, requiring proof of pretext plus "additional evidence of [age] discrimination[,]" is not required. *Id.* at 1280, 1282.

The Arbitrator found both that a prima facie case had been established and that Dex's stated reasons for its adverse actions were pretextual. Those findings comply with the standard set forth in *Jones*. The Arbitrator thus found as to pretext that the criteria that Dex relied on during the reorganization were not objective and were not fairly applied, and

-18-

that Plaintiff's "leadership assessment" score was manipulated to favor others by lowering her score after a revision. *Final Award* [#34-3] at 9-10. This finding that the reasons given by Dex were pretextual was further supported by the Arbitrator's findings that Dex had not communicated any concerns to Plaintiff about her performance, that Topping had previously communicated that Plaintiff was among a few managers that he was considering as his successor, and that Topping had confided to Plaintiff that if it became necessary to eliminate any Sales Managers, he would choose Claudia Villani or Leslie Cooke due to their performance. *Id.* at 8.

While Dex argues that the Arbitrator "applied a lesser standard applicable to Title VII claims[,]" Motion to Vacate [#36] at 12, the Court finds no evidence of that in the Arbitrator's decision. The Arbitrator did not indicate that there were mixed motives in the case; instead, she specifically found that Plaintiff left her employment "*because of unlawful age discrimination* and constructive discharge." *Final Award* [#34-3] at 5 (emphasis added). Further, the Arbitrator discussed Dex's age-related motives throughout her Findings and Conclusions. *See id.* at 6 (finding that management made comments about looking for younger workers and "[t]he message was clear: If you are an older worker, you were no longer valued or wanted"); 9 (stating "[h]ere was an opportunity to bring Walsh's and McCusker's vision of a youthful company to fruition"), 9-10 (finding that at some point Dex knew what results would happen if the criteria were applied, and that "provided Respondent with the opportunity to constructively discharge her and force her from company. . . . Respondent took the opportunity to move out an aged employee"), 10 (finding that the demotion "with the severe reduction in pay, was simply inadequate, offensive and discriminatory"). While the Arbitrator did not specifically state that she

inferred from the prima facie case and evidence of pretext that age was the factor that made the difference in Dex's decision, *Jones*, 617 F.3d at 1277, this was evident from the totality of the opinion as discussed above.  Any other interpretation would be inconsistent with the Arbitrator's findings, including that Plaintiff left her employment "because of age discrimination" and that the demotion was "discriminatory."  *Final Award* [#34-3] at 5, 10.

Dex further asserts that the Arbitrator specifically held that *after* the reorganization criteria was applied, Dex discovered Cox was to be impacted.  Therefore, Dex argues there could not be a legitimate finding that, "but for" Cox's age, she would have been selected for termination as a result of the reorganization.  *Id.* at 23; *see also Reply Mot. Vacate* [#41] at 6.  However, the Arbitrator found that the criteria were not objective and that this provided evidence of pretext.  The Arbitrator could infer from this, and obviously did, that Dex engaged in improper discrimination.  Again, *Jones* made clear that the plaintiff does not have to present pretext plus additional evidence of age discrimination.  617 F.3d at 1280, 1282.

Finally, Dex avers that Plaintiff's "myopic focus on pretext is misguided—at best—as the evidence (and Arbitrator's written findings) demonstrate Cox failed to establish a prima facie case by failing to establish the 'but for' causation requirement.  Without demonstrating she was subjected to unfair treatment because of her age . . . the [Arbitrator was not required to] reach the question of pretext."  *Reply Mot. Vacate* [#41] at 6.  However, this is inconsistent with *Jones*.  A prima facie case under the ADEA does not require such a showing; instead, the plaintiff must show only that "'1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in

the protected class.'"   *Jones*, 617 F.3d at 1279 (citation omitted).   The Arbitrator undisputedly found that these elements were met.   *Final Award* [#34-3] at 5-6.

Based on the foregoing, the Court finds that even though the Arbitrator rejected Dex's argument regarding the but-for causation standard as "wrong and misleading," she ultimately applied the law regarding that standard as set forth in *Jones*.   Accordingly, the Arbitrator did not exceed her powers by detracting from, changing, amending, or modifying existing law.   *Arbitration Agreement* [#34-1] at 5.   The Arbitrator also did not demonstrate a manifest disregard of the law.

### 2.   Whether the Arbitrator Exceeded Her Powers In Regard to Her Findings and Conclusions

Dex also asserts that the Arbitrator exceeded her powers by violating the contractual provision in the Arbitration Agreement [#34-1] that the Arbitrator would state the "essential findings and conclusions on which the award is based."   *Id.* at 5.   Dex refers to the Arbitrator's statements that "[a]ny reference to specific evidence in this Arbitration Award is not to be construed as reflecting the Arbitrator's conclusion that it is the sole or even the most significant evidence supporting a finding or conclusion.   This Arbitration Award summarily explains some, but not all, of the Arbitrator's analysis."   *Final Award* [#34-3] at 4.   The Arbitrator further stated that while she "considered all of the evidence, the majority of the evidence on which the Arbitrator's findings and conclusion and this Arbitration Award are based are [sic] not specifically referenced herein."   *Id.*

The Court can infer from this that the Arbitrator did not state all of the findings or conclusions that supported her decision, or even the most significant evidence supporting each finding or conclusion.   However, the Arbitration Agreement [#34-1] did not require her

to do this; it required only that the Arbitrator state the "*essential* findings and conclusions." *Arbitration Agreement* [#34-1] at 5 (emphasis added).  The word "essential" is not defined in the Agreement [#34-1]; thus, the Court must accord the term its "'ordinary meaning.'" *Kansas Penn Gaming, LLC v. HV Prop.*, 662 F.3d 1275, 1287 (10th Cir. 2011); *see also Fundamental Admin. Servs., ILC v. Patton*, 504 F. App'x 694, 700 (10th Cir. 2012) (stating that the Court can look to a dictionary to "find the common or ordinary definition of a term"). The term "essential" has been defined as "of the utmost importance: BASIC, INDISPENSABLE, NECESSARY."  https://www.merriam-webster.com/dictionary/essential. It has also has also been defined as "absolutely necessary; indispensable." https://www.dictionary.com/browse/essential.

The Court finds that the Arbitrator made the necessary, indispensable findings that are required to conclude that discrimination occurred under the ADEA.  The Arbitrator explained her findings regarding Plaintiff's presentation of a prima facie case, the alleged legitimate, nondiscriminatory reason that Dex presented for its decision (related to the reliance on alleged objective criteria for Plaintiff's selection for demotion), why the Arbitrator concluded that this reason was a pretext for discrimination, and her conclusion from this that Dex violated the ADEA.  In doing so, she discussed evidence that supported these findings, and stated that the evidence cited "is illustrative of the totality of evidence."  *Id.* From this, Dex's argument that it did not understand the basis of the Arbitrator's conclusion regarding age discrimination lacks merit.

Accordingly, the Court also rejects Dex's argument that the Arbitrator exceeded her powers by failing to comply with the requirement to provide the essential findings and conclusions.  Dex's Motion to Vacate [36] is thus **denied**.

**C.      The Motion to Confirm [#34]**

Under the Federal Arbitration Act ("FAA"), a party may apply to any court having jurisdiction over the underlying matter for an order confirming the award within one year of the award date.  9 U.S.C. § 9; *see also Arbitration Agreement* [#34-1] at 5 (stating that any court having jurisdiction may enter judgment upon the award).  It is undisputed that this Court has jurisdiction over this case.

"In support of a motion under 9 U.S.C. § 13, the moving party must include (a) the arbitration agreement and any written extension of time to make the award, (b) the award, and (c) each notice, affidavit, or other paper used upon an application to confirm the award, and a copy of each order of the court upon such an application." *Id.*  Plaintiff has complied with these requirements.   Further, under § 9 of the FAA, a court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in §§ 10 and 11.  The Court has denied the Motion to Vacate [#36], and finds no basis to vacate, modify, or correct the Award. [#34-3].  Accordingly, the Motion to Confirm [#34] is **granted**, and this case shall be closed.

## V.   Conclusion

Based upon the foregoing,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Confirm [#34] is **GRANTED**, and Defendant's Motion to Vacate [#36] is **DENIED**.  Accordingly, the Arbitration Award in this case is **CONFIRMED**.

IT IS FURTHER ORDERED that the Clerk of Court shall **CLOSE** this case.

Dated:  March 26, 2021

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge